Number 182127, Marco Martinez v. Sun Life Assurance Co. of Canada. Mr. Barton, good morning. Maybe before you start, maybe I should welcome members of the Taiwan Judiciary who are visiting us. I think they picked a good case to hear. Thank you. May it please the Court. My name is Joseph Barton. On behalf of the plaintiff appellant, I would like to reserve three minutes for rebuttal time. You may. This is an appeal of two decisions or claims that challenge Sun Life's reduction of the amount of long-term disability benefits by the amount that the plaintiff or service member receives as veterans benefits. Even though the Sun Life policy contains numerous, very specific exclusions or other income provisions as offsets, the Sun Life policy does not use the term veterans benefits or anything close to it, but instead relies on the obscure and undefined phrase compulsory benefit actor law, for which the only example that Sun Life has offered as to what falls within it is veterans benefits. And that's the rationale for its decision. There are three categories of claims in this case. One is a USERRA discrimination claim, the second is a set of ERISA disclosure claims, and the third is an ERISA benefit claim. These claims, or at least the categories, are independent of each other. Procedurally, the district court decided the benefit claim first on summary judgment without any discovery, and then decided the USERRA discrimination claim and ERISA disclosure claims on judgment on the pleadings. In applying or deciding the judgment on the pleadings, the court relied heavily on the summary judgment decision or the findings on summary judgment to make the decisions on the motion for judgment of the pleadings. Counsel, I struggle to understand your discrimination claim in the sense that it is true that veterans benefits are the product of military service, but I believe that your opponent's position, and I think the language bears this out, that any benefit plan, whatever the source that met the definition of a compulsory benefit act, would result in a diminution of the long-term disability benefits. How is that discriminatory when the policy would be applied in that way? I think their essential argument is that they have a facially neutral policy. That's their argument. The question here is really, has the complaint alleged a prima facie claim such that it should proceed? And what USERRA's discrimination provision says is that a service member who has performed service shall not be denied a benefit of employment on the basis of membership or performance of that service. The way that the case law interprets that and says that military status is a substantial or motivating factor for the adverse employment decision, that is a prima facie case. At that point, unlike almost any other employment statute, the burden then shifts to them. In this case, you can take the Velasquez v. Garcia decision, if you have a tie to military service, that is sufficient to state a prima facie case of discrimination. VA pays medical benefits. Suppose you have a procedure that costs $5,000 and VA covers it. Can you go to your private employer's insurer and say, I want that same $5,000 reimbursed? And when they say, sorry, it's already been reimbursed by the VA, you can say that's discrimination against the VA? If they are taking into account a benefit that you receive as military service, then at least as purposes of state, if they have another reason, because that's their burden. Well, their reason is they have a general policy of not reimbursing where some other source is providing reimbursement. What this court has said, what the other circuits have said, is where you have a facially neutral policy. And if the facially neutral policy is tied to military service, that is enough to state a prima facie case. The burden then shifts. Does that require improper motivation also? I think what you have to look at here, because we are on a motion for judgment of the pleadings, is has the plaintiff stated a prima facie case? And to state a prima facie case, that is sufficient. The burden then shifts for them, the defendant, to show they would have taken the action with blinders on as to military service. Sure, in your normal discrimination concept, you've got a McDonnell Douglas type approach because you don't know what happened and why. But when you're talking about a benefit coverage one, you've actually got the policy of the employer before the court. And it's obvious what the reason is. The reason is they've got a clause in their plan that tries to get rid of any obligation to pay benefits if anyone else is paying benefits. And then there's no rebuttal to that. There's no suggestion that that was put in there. The claim doesn't allege they put that in there because they don't like veterans or something like that. That's because I don't know why they put it in the policy. We don't have – I'm sorry, Your Honor. If you look at this clause, are you telling me you don't know why they put in the policy that they don't pay benefits if they're provided or available from all these other sources? I know why they don't do it for other sources. And the other sources are very specific as to what – you're talking about Social Security, an automobile plan, Retirement Railroad Act. We know exactly what those things mean. They put in a phrase that says compulsory benefit act or law. At what point – I don't know when or why or how they decided that veterans' benefits falls within that. Was it because they have anti-veteran motivation? I don't know the answer to that. So suppose the policy actually said D, veterans' benefits. What would you then say? If they said D, we subtract for veterans' benefits, I think there's a prima facie case of discrimination as a result of that. So whether they put it in or don't put it in, as long as they say we're going to subtract for your – we're going to not pay you your MRI if the VA has already paid for the MRI, you've got a prima facie case. I think if they say yes, Your Honor, it's the answer. Well, it seems to me the logic of your position is that they simply cannot deduct veterans' benefits. That it is inherently contrary to OSERA to deduct veterans' benefits in the way that they're doing. That as a matter of substantive discrimination law, they simply cannot do that. That seems to me the logic of your position. I think that is the logic of my position, Your Honor. But I think as to state a prima facie case, we have certainly stated that. If they can come back with evidence to prove some other reason that they're doing it, they can take that and take it to a jury and let the jury decide. But for purposes of this – The reason they're doing it, they're veterans' benefits. Veterans' benefits that should be considered in terms of the entitlement of your client to these long-term disability benefits. The policy is trying to prevent what they view as a kind of, I guess, a double recovery. That's clearly what's going on here. And it doesn't matter where that other recovery comes from. They just don't think that their policy should be in play in those circumstances, whatever the source of the money. I guess that is a question as to what is the purpose they're doing that. If you look at the cases – Okay, well, maybe we should move on. I'm sorry, Your Honor. Could you go back – that's a good suggestion. Could you go back to the policy and compulsory benefit act or law? Should we read that with the presumption that it means something? It's not supersurge. I'm not suggesting that it's supersurge. If it doesn't refer to VA benefits, what does it refer to? Give me an example. I think the problem with the term, Your Honor, is that it could refer to one of three things. I think there's at least three meanings of compulsory benefit act or law that any participant could understand. Just give me an example of some benefit that it refers to. Where a third party compels someone to provide you a benefit. For example, sick leave laws. Where you are compelled to participate in a benefit. Someone is compelling you to participate. Social Security is an example like that. Those are benefits that can be compulsory. The way the defendants interpret it, I think, is broader than that. And what they would say is it applies to any non-discretionary bonus. But that interpretation is nearly one of three definitions, at least, of what it means. And then I think your argument is that VA benefits are not compulsory? They're not. No one compels. I think it depends on how you define that term. And that term, compulsory benefit act or law, is an ambiguous term. Under their definition, they come up with a reason to why it falls in. But if you define it under one of those other two definitions, they don't. Which definition do you prefer we adopt? I think that it has to be construed in favor of the insurer. And so it should be construed most constrictively. And that would be where a government or some third party compels the person to provide or participate in the benefit. Okay, so let's go with that one. Hasn't Congress passed a law that compels the VA administration to pay benefits, such that if they hadn't paid benefits to your client, the client could have gone to court, sued the VA, and got an order that the benefits be paid because Congress mandated that they be paid. It wasn't left to the VA's discretion. The VA, and this is all part of the government. I think that is the equivalent of my firm saying to our employees, as a matter of policy, we pay you. If you're here on Christmas Day, we will pay you $100 each year. We don't think of ourselves as saying I've compelled myself to do it. It's something we have, you might say, obligated to do, but we're not compelled by any third party. So you're viewing Congress and the VA agency as the same party and therefore saying it can never compel itself to do anything? It's the federal government. As a partner of my firm, I compel my administrator to pay $100. I mean, it's the firm that is either obligated, but an obligation is different. No one is forcing us to provide $100 Christmas bonus. And I think there is a difference between what those things are and a reasonable participant. And that's always the show-to-show ambiguity is a reasonable participant can come up with a definition. Even if we accept your premise that the original decision by Congress is to compel the agency to pay benefits in certain circumstances, even if Congress certainly had discretion whether to do it or not, once it did it, doesn't it become compulsory in the sense that the rights are vested, the agency, including the government itself, can compel itself in a way private individuals may not be able to? For example, there's a property interest that the Constitution under the 14th and Fifth Amendment would compel. The question is not for purpose of ambiguity whether or not it can fit in the definition. The question, as this circuit said in Greenlee v. Mariner, is there a single accepted meaning, if I can finish, Your Honor, by the layperson, that the layperson understands? And if there is not a single accepted meaning, then it's ambiguous. And I have searched. There is nothing that I can find outside of a couple of insurance companies adopting this undefined, undisclosed term as to what compulsory benefit act or law is. It does not have any meaning to the layperson. That's why it's ambiguous. Thank you, Your Honor. Thank you. Mr. Schmitke, I hope I pronounced your name right. You did, Your Honor. Thank you. Thank you. May it please the Court, my name is Mark Schmitke. I'm here today on behalf of Sun Life Insurance Company of Canada, along with my co-counsel, Diane Saunders. Counsel, can I start off with something that concerns me? Thank you. Is your sole reliance in defending the decision of the District Court on this phrase, compulsory benefit act or law, is that your sole reliance in defending the District Court's decision? No, Your Honor. We also relied on the Workers' Compensation Act or any act of law, law of like intent. Why would you? That surprises me, frankly, because it seems pretty clear from our own precedence that the veterans' benefits are very different than these other itemized benefit programs, workers' comp, unemployment compensation, and so forth. We make that pretty clear in our Hannington decision that VA benefits, for example, although they're based, talking about the disability benefits, are based on disability, I believe even if one can somehow resume work, they're still entitled to those benefits. So it's a very different kind of benefit. So how could you rely upon that phrase, other act or law of like intent? The intent of veterans' benefits seems very different. Happy to answer that, Your Honor. So Hannington analyzed whether or not veterans' disability benefits were similar to Social Security or railroad retirement. That's right. Didn't address workers' compensation. In fact, what Hannington does say in a footnote is that one of the reasons it concluded that veterans' disability benefits were not similar to Social Security or railroad retirement is because you could get both. There was no prohibition under the Social Security Act, for example, of collecting Social Security and veterans' disability benefits at the same time. Under federal law, there is a prohibition for federal employees that cannot collect federal workers' compensation and veterans' disability benefits. It's prohibited by law. They can make a choice. It's one or the other, but not both. What that tells us is that those laws are of like intent, at least in the mind of the federal government. And the like intent is a dual intent. One, you have a system that provides compensation for injuries without proof of fault. And the corresponding ancillary to that is that you have limited liability. And that's the situation with workers' compensation. And that's the situation with veterans' disability benefits. They have the same dual intent. And so that's our fallback argument. If it's not a compulsory benefit-actor law, which we believe it is, then it's an act of like intent to workers' compensation because it has the same dual intent as workers' compensation. You look like you have a follow-up question. Well, I do. Yes, thank you. I mean, it's also somewhat striking, and I don't raise this in the context of whether there was lack of adequate notice or whether it was prejudicial, but some life seems somewhat uncertain about which provision it should rely upon in treating the veterans' benefits as it does. I mean, it has relied on the Social Security provision. It's relied on any other act of law of like intent or the compulsory benefit provision. I mean, that very uncertainty, if you will, of alliance suggests that some life itself is not really sure which provision of the plan applies, and that would seem to lend some force to the ambiguity argument that the plaintiff is making. Would it not? In other words, you can't quite figure it out yourselves. No, Your Honor, it would not. What it is is a reflection of Belt and Suspender's drafting of contract, which is something we learned from our first day in law school. So let me talk a little bit about long-term disability coverage because it occupies an important low-cost alternative space in the employee benefit arena. Most employers could not provide disability coverage to the employees if they had to go out in the market and do the other alternative, which is individual disability policies. They're much more expensive, and they're individually underwritten. So you can't guarantee that any particular employee is going to get an individual disability policy. And they're underwritten based on health history and other coverage that's available for disability. Group long-term disability policies are issued to employers at a low cost. Everybody who's within, once the employer pays for that policy, they designate the class of employees, and everybody who's within that class of employee is covered, regardless of their health history, regardless of what other opportunities they may have for income in the event of disability. And so how you take care of that is you put in an other income benefit provision that offsets those other sources of disability income, where they arise from the same disability, which is what the case is here. And when you do that, you keep the cost down so that the employers can provide their benefits, and you prevent situations where someone can go out on disability and have enough sources of income that they actually make more, or the same as when they're working, which obviously is problematic. Now, how do you do that with that other income benefit provision? You draft it very broadly. This provision includes, by my count, at least three catch-all phrases. Some of these things overlap. There's no question about that. But you want it broadly. You want to capture sources of income on disability to offset under this policy to keep the cost of these policies down. When these policy forms are drafted, they're in place for years, sometimes a decade or more. You can't predict from now to 10 years from now to 15 years from now what other sources of disability income may be out there. So you draft the clause very broadly. And there may be multiple provisions in here that potentially apply to any particular outside source of disability income. Five judges in this country have ruled, five federal judges, that Compulsory Benefit Act of law is unambiguous and includes veterans' disability benefits. And those are judges, impartial judges, intelligent judges, who have all looked at the same policy, the same language, the same background, and have ruled the same way. And that kind of uniformity is crucial. So given these disputes over how veterans' benefits should be handled are not new. They've been around for a long time. Why hasn't Sun Life, I mean it specifies some benefit programs that clearly require the deduction we have here. Why hasn't it amended the policies to be very specific about veteran benefits instead of relying on these kind of catch-all provisions which lend themselves to the kind of arguments that we're dealing with here? It actually has, Your Honor, but not in this particular policy form, which has been around for quite a long time. And so it takes time to get these policy forms amended. The policy drafting situation is you go out, you get multiple insurance commissioners to approve policy forms. It's not an easy process. It doesn't happen every day. It doesn't happen every year. It doesn't always even happen every decade. So when you're drafting these policies, you've got to have broad provisions, especially in the other income benefit sphere, to cover things you may or may not know down the road. And maybe they just missed it, but that's okay because they've got enough catch-all phrases to cover it and to cover other things like state disability laws and other things that aren't mentioned specifically, but provide other sources of disability income so that the policy provides what it's intended to provide. The primary goal of these policies is to provide benefits to people that don't have other sources. If somebody is out there with plenty of individual disability coverage, they don't need the group disability coverage. These are low-cost policies intended to provide benefits to people who don't have other sources. If they do have other sources, good for them, but it's going to reduce the benefit they get under this particular policy. The argument that the compulsory means the government can't compel itself to do something doesn't make any sense. First of all, it doesn't appear anywhere in the policy, that provision. It doesn't appear anywhere in the dictionaries when you look at the word compulsory. Third of all, it's not consistent with the rest of the provision. There are several provisions in the other income benefit portion of the policy that refer to government-provided benefits. The fact that compulsory benefit actor law ought to also apply to a government-provided benefit just makes sense. It should not be surprising at all. But doesn't that cut the other way, though, that you would then say any government-provided benefit would be one of the excluded? We could have added that, too, Your Honor, but we didn't, and we didn't need to in this case because we said writing compulsory benefit actor law. So to go back to Judge Perpeza's first question, though, if everything you said, taking all of that accurately, it would seem to say that if any one provision here were plain and unambiguous because we're working with de novo review, we employ under our Hughes decision contra preferendum, so we've got to find any ambiguity against you, it does catch one's attention that a Sun Life employee in looking at this wouldn't promptly say, well, this is obviously a compulsory benefit actor law or at least this is a compulsory benefit actor. It may also be this because this is plain and unambiguous, too. It looks more like, though, they were looking for which slot and at least one of them didn't pick that slot of compulsory benefit. Well, in this case they did. When we talked about Hannington earlier, keep in mind Hannington was not originally a Sun Life policy. It was by a different company with a different history. And I can't answer why they didn't rely on it in that case. They did in this case. They did in Holbrook's. And the law, at least according to Holbrook's, is it's unambiguous and it includes veterans' disability benefits. If there are other clauses that may also apply, you're going to do the same thing as we as lawyers do. You say, well, if this is the one we're relying on, but if that one doesn't work, then we're going with the backup and we're going with the next one. So you're saying we should read the July 14 letter, which starts out by referring to Social Security Act or similar plan or act of other law intent, and then follows with a quotation from Holbrook's. We should read that as saying it applies under both. I think that was the idea. And keep in mind, Your Honor, that that letter is being written to an individual who lives in Texas under a policy issued in Texas and he worked in Texas. It didn't have anything to do with the First Circuit. It didn't have anything to do with Hannington. Hannington's mentioned that letter, but it was in the Fifth Circuit. Now, the problem is, and this is where uniformity is crucial, is you've got somebody, when you're administering these benefits, you've got somebody living in one jurisdiction who may or may not sue you in another jurisdiction. What law do you apply? So you're going to cover your bases. You're going to cover your bases because he's in the Fifth Circuit. The Fifth Circuit hasn't ruled on whether veterans' disability benefits are similar to the Social Security Act or Railroad Retirement Act like the First Circuit has. So you're going to cover your bases. You don't know why he's going to sue you. He didn't sue in the Fifth Circuit. He sued in the First Circuit. I have suspicions I know why, but that's what happens. But when you're administering these claims, you've got to be prepared for everything. I have no further. I'm happy to answer questions about you, sir, but I think the Court understands our position. If you have nothing further, we'll rest on our breeze. Thank you. Thank you. Mr. Bison? Yes. Thank you, Your Honor. I want to turn to Hannington and explain exactly how Hannington also applies to the USARA claims, so you understand. There has to be a tie to service, and what this Court said in Hannington is VA benefits are based on service. To the extent that there is that tie establishes a prima facie case. They can come in and argue and say, all we did, we don't have veterans animus, all we did is we want to take whatever money, whatever people get. That's an argument they can make. They can put forward evidence if they have it, if that's the reason, and they can make that argument either on summary judgment or to a jury. But for purposes of do I state a claim, and has this complaint state a claim, for count one, it ought to be sufficient. There are also other indicia in terms of the timing of the decision. They made it shortly after they found out he made the award, and they have contrary to what the defendants try to present, they have different reasons as to why they come forward with this. And I think this goes to also the point with respect to the benefit claim. When they wrote, they initially wrote a letter on telling Mr. Martinez that they were going to take an offset, and what they're supposed to do under WISA 503, which requires specific provisions and specific things they're going to rely on, is give specific reasons. And they quoted basically every offset and said we're taking the offset, without any explanation. He wrote a letter, asked them for an explanation, and in the July 14, 2015 letter, where they're again supposed to give them a specific reason, what they said is specifically, this is our addendum at 18, veterans benefits would be considered disability or retirement benefits under the United States Social Security Act, or any similar plan or act, or any similar law like intent. That was their reason. They go on to cite cases, but in terms of what you're supposed to convey to the average person so the average person can understand the basis of your decision and the provision on the policy that you're relying on, that's what they relied on. And I think that illustrates they are trying, they're fumbling around trying to come up with reasons how to shove veterans benefits into their policy. And that illustrates that this policy, the term itself, Compulsory Benefit Act or law, is ambiguous. It does not convey meaning to the ordinary person, which is what it's supposed to do, and it must be construed against them, and that for this reason, some adjustment should not have been entered. And very briefly, it also goes into why we also, the disclosure claims ought to be reversed. Those claims are established that if they have to convey information in the ordinary person, in the average participant. Thank you, Your Honor. The letter you're referring to, are you also referring to the July 14, 2015 letter? Correct, Your Honor. It's in our addendum at 18. Thank you, Your Honor. All rise.